IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LISA ANN SMITH,

                Plaintiff,

    v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                Defendant.

OPINION AND ORDER

22-cv-163-slc

---

Plaintiff Lisa Ann Smith brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of an adverse decision of the acting commissioner of Social Security. Smith argues that the administrative law judge (ALJ) who reviewed her claim at the administrative level erred by: (1) failing to properly evaluate the opinion of Smith's rheumatologist, Dr. Melissa Kuan; (2) not adequately explaining his conclusion that Smith could perform a limited range of sedentary work; (3) improperly evaluating Smith's subjective symptoms; and (4) failing to resolve a conflict between Smith's limitations and one of the jobs identified by the vocational expert. Because none of these arguments is persuasive, I am affirming the acting commissioner's decision.

FACTS

The following facts are drawn from the administrative record (AR), filed with the acting commissioner's answer, dkt. 12:

Smith sought benefits based on physical and mental impairments, alleging disability beginning on January 1, 2019, when she was 41 years old. AR 16, 30. After her application was denied initially and on reconsideration, she requested a hearing before an ALJ. In a June 1, 2021 decision, the ALJ found that Smith suffered from the following severe impairments: systemic lupus erythematosus, fibromyalgia, generalized anxiety disorder, and depression. AR 19. After finding that Smith's impairments were not severe enough to meet or medically equal the criteria for a listed disability, the ALJ ascribed to Smith the RFC to sedentary work with additional

physical, mental and environmental restrictions.  AR 19-22.  Based on the testimony of a vocational expert (VE), the ALJ found that Smith was not disabled because she could perform a significant number of jobs in the national economy, including order clerk and telephone quotation clerk.  AR 31.  The Appeals Council declined review.  AR 1-6.  Smith now appeals to this court.

## OPINION

In reviewing an ALJ's decision, this court is limited to determining whether the decision is supported by "substantial evidence," meaning "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).  This deferential standard of review means that the court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] judgment for that of the Commissioner." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. Apr. 14, 2021) (quoting *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019)); *see also Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022) (noting substantial evidence is not high threshold: "[w]e will affirm ALJ decisions to deny disability benefits when the ALJ follows applicable law and supports its conclusions with substantial evidence.").  We also do not "scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision.  Rather, the administrative law judge must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted); *see also Deborah M.*, 994 F.3d at 788 ("an ALJ doesn't need to address every piece of evidence, but he or she can't ignore a line of evidence supporting a finding of disability"); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must . . . explain his analysis of the evidence with enough detail and clarity

to permit meaningful appellate review."). Smith bears the burden of proving that she is disabled. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).

Against this backdrop, I address Smith four challenges to the ALJ's opinion:

## I. Dr. Kuan's Opinion

Under the regulations applicable to Smith's benefits application, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a) (evaluating opinion evidence for claims filed after March 27, 2017). Instead, the "most important factors" in weighing a medical source's opinions now are supportability and consistency. § 404.1520c(b)(2). As for supportability, the regulations state: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." § 404.1520c(c)(1). Regarding consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." § 404.1520c(c)(2). Finally, an ALJ may, but is not required to, explain how he considered the source's relationship with the claimant, specialization, and any other relevant factors. § 404.1520c(b)(1) and (2) and (c)(3)-(5).

Dr. Kuan completed a treating source statement on December 3, 2020, noting that Smith was diagnosed with systemic lupus erythematosus (SLE), which met Listing 14.02 due to Smith's marked limitations in the activities of daily living and completing tasks in a timely manner with

respect to pace.[1]   AR 807-09.   Kuan stated that Smith suffered severe fatigue, joint pain, and sleep problems that caused the following limitations: missing two or three days of work every month; sitting and walking for one hour and standing for two hours at a time; no combination of sitting, standing, and walking for eight hours a day, five days a week; resting for 30 minutes one to two times a day; and needing more than three daily breaks.  *Id.*

The question for the court is whether the ALJ's rationale for the weight he gave to Dr. Kuan's opinion is both discernible and adequately supported by the administrative record.   It was.

The ALJ explained that he did not find Dr. Kuan's opinion very persuasive because:  (1) Smith reported a 50% relief in symptoms and better mobility; (2) Dr. Kuan's examination revealed that Smith had less pain, a better range of motion, a normal gait, no proximal or extremity weakness, and only some small joint tenderness; (3) Smith reported taking her mother shopping twice a week, driving short distances, and being "productive" in her house during the pandemic; and (4) Dr. Kuan did not provide any explanation for Smith's sitting, standing, and walking limitations.  AR 28.   Because Smith's challenges to the ALJ's first two reasons are related, I will address those first and then turn to Smith's arguments regarding the ALJ's other two reasons.

## A.  Symptom Improvement and Minimal Medical Findings

As the ALJ noted, Smith reported to Dr. Kuan on January 15, 2020, that she was feeling at least 50% better after being prescribed hydroxychloroquine (Plaquenil) and a limited course of methylprednisolone (steroid) in October 2019.  AR 660.   Smith argues that the ALJ cherry-picked the evidence by only considering findings favorable to his decision.  *See Reinaas v. Saul*,

---

[1] Smith has not challenged the ALJ's step 3 finding that Smith's impairments do not meet or medically equal a listing.

4

953 F.3d 461, 467 (7th Cir. 2020) ("[T]he problem is not that the ALJ weighed the evidence in a certain way; it is that she cited only evidence favorable to her decision without discussing any contrary evidence."). Specifically, Smith contends that the ALJ ignored the following evidence appearing in the same January 2020 treatment note:

- Smith reported having pain levels of 6-7 out of 10, which was worse in the mornings for several days prior.

- Smith reported intermittent swelling in her hands and continued pain in her hips, knees, and foot.

- Smith had limited range of motion in her neck and shoulder due to pain.

- Swelling and increased temperature in Smith's right elbow and mild metatarsophalangeal joint tenderness.

*See* AR 660-61.[2]

However, as the acting commissioner points out, the ALJ discussed this evidence earlier in his decision. *See* AR 24 (citing AR 660). The fact that he did not discuss it directly in conjunction with Kuan's opinion is of no import. *See Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021) ("An ALJ need not rehash every detail each time he states conclusions on various subjects."); *Deloney v. Saul*, 840 F. App'x 1, 5 (7th Cir. 2020) (ALJ's analysis of medical opinion can find support elsewhere in decision).

Specifically, the ALJ acknowledged that Smith reported an increase in pain and stiffness in January 2020 because she had stopped taking steroid medication in December 2020, that Smith still had a decreased range of motion and pain in her shoulders, and that Smith continued to have some pain in her neck, upper back, hips, knees, and foot. AR 24. However, the ALJ did

---

[2] Smith also cites diffuse weakness and aching pain worse with activities up to 9 out of 10, but that reported symptom regularly appeared as part of Dr. Kuan's summary of Smith's history since at least October 2019. *See* AR 571-72. The January 2020 note makes clear that Smith's symptoms had improved by 50%, which is consistent with Smith's newly reported 6-7 out of 10 pain rating. Therefore, the ALJ did not err in failing to consider the more severe pain rating.

not find that these reports justified work-preclusive limitations because Dr. Kuan's examination that same day revealed that Smith had a better range of motion, more mobility, and less pain in her neck, upper back, and shoulders; no inflammatory changes or any limited range of motion in her hips, knees, and foot; a normal gait; no proximal or extremity weakness; and only some small joint tenderness on examination. *Id.*

Smith does not contest the accuracy of the ALJ's findings, which the ALJ supported with citations to the record. Instead, she argues that the ALJ's analysis failed to account for the temporary nature of her improvement and her significant ongoing limitations. *See Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce."); *Tate v. Long Term Disability Plan for Salaried Employees of Champion*, 545 F.3d 555, 561 (7th Cir. 2008) (Doctor's conclusion that medication provided significant benefit "does not prove anything unless the improvement is shown to be connected in some rational way to [claimant's] ability to work."). But contrary to Smith's assertion, symptom improvement is not relevant only "if it restores [an] individual's capacity to engage in substantial gainful employment." Dkt. 16 at 12. Symptom improvement is part of the overall evidence relevant to the ALJ's decision. *See* Soc. Sec. Ruling (SSR) 16-3p at *6-7 (important information about symptoms includes how they change over time); *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013) (although ALJ must take episodic nature of chronic conditions into account, evidence supported ALJ's conclusion that claimant retained ability to work with certain limitations because symptoms had improved over time).

Smith says that any improvement she experienced in January 2020 was temporary because treatment notes from the fall and winter of 2020 show that she "continued to exhibit abnormal examinations." Dkt. 16 at 13 (citing AR 758 (July 2020 physical therapy note showing 75% trunk rotation, mild rib discomfort, chest and rib tenderness, and increased pain with household tasks); AR 916-17, 920 (September 2020 reports to Kuan of ongoing joint pain worsening with activities, tender small joints, and chest pain with palpation); and AR 884, 895,

944 (October 2020 physical therapy note showing rib and spine tenderness)). However, Smith has not identified any unaddressed medical evidence that clearly shows she would be entitled to more restrictive physical limitations. *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (claimant who doesn't meet burden of identifying medical evidence justifying further restrictions is not entitled to remand).

The ALJ considered the medical evidence from the fall and winter 2020 and reached a different conclusion.[3] He pointed out that despite some abnormalities (pain and tenderness), Smith was generally doing better in this period, as evidenced by the following:

- Smith told her primary care physician in July 2020 that she had been feeling better since taking Plaquenil.

- Smith reported feeling "better overall" in September 2020.

- Smith reported to her doctors in August and October 2020 that she had less pain following physical therapy.

- Smith told her mental health therapist in October 2020 that she had hiked 13 miles, she was mediating more, and becoming more involved was helping her feel better.

- Dr. Kuan wrote in September 2020 that Smith's labs looked much better, there were no clear inflammatory changes, and Smith's SLE was not active.

AR 25-26 (citing AR 679, 854, 885, 964, 966, and 1038).

The ALJ was entitled to consider the totality of this evidence in deciding whether Dr. Kuan's opinion was supported by and consistent with the evidence as a whole. He concluded that overall, the medical evidence was inconsistent with the restrictive limitations the doctor endorsed. Although Smith cites various examinations in the record showing that she had diffuse joint tenderness and decreased range of motion, *see* Dkt. 16 at 15-16, the ALJ considered Smith's

---

[3] Although the ALJ did not specifically discuss the July and October 2020 physical therapy notes, he was not required to do so. *See Gedatus*, 994 F.3d at 903. In any event, the ALJ considered Smith's doctors' treatment notes from that same period. *See* AR 25.

7

treatment history and cited many treatment records revealing her stiffness, tenderness, and range of motion. AR 23-25.

Smith also faults the ALJ for citing her normal gait and lack of extremity weakness because she never alleged that she had gait problems or muscle weakness. According to Smith, her primary issues are pain, swelling, and stiffness. However, as the acting commissioner points out, a normal gait and the absence of weakness are not wholly unrelated to Dr. Kuan's opinion, which addressed Smith's fatigue and ability to walk. Smith also testified at the hearing and reported on several other occasions that she had walking and lifting difficulties. *See* AR 48, 51, 60, 79, 297, 323, 670. Therefore, it was reasonable for the ALJ to consider the normal gait and strength findings in evaluating the limitations that Dr. Kuan assessed. Moreover, any error the ALJ may have committed in citing these particular findings is harmless because he pointed to several other findings that also support his decision. *See Karr*, 989 F.3d at 513 (even where ALJ commits legal error, remand not required if ALJ would reach same result on remand).

Finally, Smith criticizes the ALJ for not addressing how Dr. Kuan's opinion was consistent with Dr. Larry Studt's opinion that she would be absent two days a month, but her objections in this regard require little discussion. The ALJ was not required to compare Dr. Kuan's opinion to every other opinion in the record. In any event, the ALJ referenced Dr. Studt's opinion and noted that Studt merely relied on Smith's existing medical records and did not examine Smith or have a prior treatment relationship with her. AR 29. The ALJ then reasonably found Dr. Studt's opinion unpersuasive for reasons similar to those he gave for finding Dr. Kuan's opinion unpersuasive. *Id.*

## B. Daily Activities

Smith argues that the ALJ merely cited some of her daily activities without explaining how they were inconsistent with Dr. Kuan's opinion and ignored evidence that she had significant limitations on her daily actions. However, the ALJ acknowledged that Smith

8

experienced limitations with respect to her activities and that she claimed to have good and bad days on an unpredictable basis. AR 21, 23, and 30. Although the ALJ highlighted the evidence that supported his conclusion, it is plain that he did not ignore the qualified nature of Smith's activities. He simply found such evidence uncompelling. *See* AR 30 ("This is not to say that the claimant was symptom free, or did not experience difficulty performing some tasks. However, the record as a whole does not demonstrate the existence of limitations of such severity as to have precluded her from performing all work on a regular and continuing basis at any time from the alleged onset date of disability.").

The ALJ also did not equate Smith's activities with the ability to hold a job. As he stated in his decision, the ALJ found that Smith's ability to take her mother shopping twice a week, drive short distances for less than an hour at a time, and remain productive during quarantine contradicted Dr. Kuan's specific finding that Smith had marked limitations with activities of daily living. AR 28.

## C. Failure to Explain Sitting, Standing, and Walking Limitations

Smith contends that the ALJ erred by noting that Dr. Kuan did not provide an explanation for the sitting, standing, and walking limitations she assessed. Contrary to Smith's assertion, the form that Dr. Kuan completed included space for comments, *see* AR 809; the doctor just chose not to complete that section.[4] The ALJ also did not err in relying on this reason because the regulations specifically provide that supporting explanations for medical opinions will be considered in determining the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(c)(1).

Smith argues that if the ALJ wanted additional detail, he should have asked Dr. Kuan for an explanation. However, it is Smith and not the ALJ who bears the burden of identifying

---

[4] Notably, the form at issue was prepared by Smith's attorney. *See* AR 810.

medical evidence justifying further restrictions and proving that she is disabled. *Karr*, 989 F.3d at 513; *Loveless*, 810 F.3d at 508. Further, an ALJ is entitled to presume that a claimant who is represented by counsel is presenting her strongest case for benefits. *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). Courts generally leave it up to the ALJ to determine how much evidence to gather, *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014), and they won't disturb the ALJ's decision absent a significant omission, *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994). Smith has not identified any relevant facts or findings that Dr. Kuan would have included had she been asked to do so by the ALJ; mere conjecture or speculation that additional evidence might have been obtained is not enough. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009).

### D. Conclusion

In sum, the ALJ properly evaluated Dr. Kuan's opinion in accordance with the regulation and cited logical reasons, supported by the record, for his conclusions. To the extent that the record contained any conflicting evidence, the ALJ reasonably resolved those conflicts, precluding second-guessing by this court. The fact that a different fact-finder could have weighed the evidence differently does not make the decision erroneous. *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). Remand is not warranted on this issue.

## II. RFC Determination

Smith next contends that the ALJ erred in assessing her RFC. The ALJ did not adopt any one doctor's opinion about Smith's limitations, but he was not required to do so. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (ALJ need not adopt a particular medical opinion to support the RFC). He limited Smith to sedentary work with a variety of postural, manipulative, environmental, and mental limitations: never climb ladders, ropes or scaffolds;

occasionally climb ramps or stairs, balance, stoop, kneel, crouch, crawl; frequently handle or finger with the bilateral upper extremities; understand, remember, or carry out only simple instructions and routine tasks; and no fast-paced production quota or rate.[5]  AR 22.  The ALJ noted that any production requirements should be more goal-oriented, such as based on a daily or weekly or monthly quota rather than assembly line work or other similar work.  *Id.*  However, Smith says that the ALJ needed to (1) explain why he found that Smith was capable of sitting for six hours a day; (2) include allowances for off-task time and/or absences to account for the waxing and waning of Smith's pain and fatigue; and (3) accurately account for her moderate limitations in concentration, persistence, or pace (CPP) in the RFC assessment.

## A.  Physical Limitations

Smith is correct that the ALJ did not expressly tie the physical limitations in the RFC to specific evidence in the record.  But it is Smith who has the burden to show that her impairments required more significant restrictions.  *Karr*, 989 F.3d at 513; *Loveless*, 810 F.3d at 508.  Smith has not identified any unaddressed evidence that shows she would be entitled to more significant limitations than the ALJ found.  The only specific medical evidence supporting her claim that she cannot sit for six hours or needs time off was Dr. Kuan's opinion; I already have explained why the ALJ did not err in rejecting that evidence.

The only other evidence consists of Smith's subjective complaints.  But complaints alone are not proof of disability.  *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) ("Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence.") (citing 42 U.S.C. § 423(d)(5)(A)).  In any event, as I discuss below, the ALJ reasonably declined to fully credit Smith's allegations of disabling limitations for many of the same reasons that he rejected Dr.

---

[5] I have not recited the extensive environmental limitations because they are not at issue in this appeal.

11

Kuan's opinion: they were inconsistent with the objective medical evidence, her course of treatment, her reported improvement, and her daily activities. AR 23-30. This assessment lends further support to the ALJ's conclusion that Smith was capable of a range of sedentary work.

## B. Mental Limitations

Smith argues that the ALJ provided no explanation for how her moderate CPP limitations translated into the RFC. Although Smith recounts her difficulties with focus, concentration, fatigue, and anxiety, dkt. 16 at 19, she does not identify what specific limitations the ALJ should have included to reflect the moderate rating.

The ALJ accounted for Smith's CPP difficulties by limiting her to simple instructions, routine tasks, and goal-orientated production requirements (daily, weekly, or monthly) with no fast-paced production quota or rate (as on an assembly line). Smith generally asserts that she could not meet goal-oriented requirements because she fatigues easily and has problems maintaining pace and persisting at tasks. But as discussed above and in conjunction with the subjective symptom analysis below, the ALJ considered Smith's alleged difficulties with staying focused and on task and reasonably concluded that she would not have to be off-task for excessive amounts of time. Smith points to no unaddressed evidence that justifies more significant limitations in this area.

## III. Subjective Symptom Analysis

Smith contends the ALJ erred in evaluating her subjective symptoms by failing to consider the side effects of her medications, the efforts she took to relieve pain, her course of treatment, and her abnormal clinical findings. She faults the ALJ for simply summarizing some of this evidence. But the Seventh Circuit has rejected this argument as "unavailing because summaries are appropriate." *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021). "[E]qually

unavailing" is the argument that "the ALJ's summary was a partial summary of select evidence . . . because all summaries must be partial and selective." *Id.*

Smith says that the ALJ failed to credit her reported medication side effects, including that: Hydroxychloroquine improved her pain but caused a mental fog, *see* AR 670; Methylprednisolone improved her pain but caused headaches, *id.*; and her medications generally caused stomach pain, nausea, and tiredness, *see* AR 299, 325. But it is reasonable to infer that the ALJ considered these specific side effects because he asked Smith about them during the hearing. *See* AR 63-64. Although the ALJ did not describe Smith's reported side effects in his decision, he was not required to do so. *See Gedatus*, 994 F.3d at 903 (An ALJ "need not discuss every detail related to every factor" relevant to the credibility analysis.).

Smith also argues that even though the ALJ acknowledged that she regularly exhibited tenderness upon examination and was in constant pain, he did not create a logical bridge from those findings to his conclusion that Smith did not have disabling fatigue and cognitive difficulties. However, it is clear that the ALJ considered Smith's symptoms in this area but believed that they were not as severe or disabling as Smith claimed. Contrary to Smith's assertion, the ALJ explained his reasoning. As discussed in conjunction with Dr. Kuan's opinion and the RFC, the ALJ provided a well-reasoned analysis of what he considered to be relatively unremarkable objective evidence; the nature of Smith's treatment, including her reported improvements; and Smith's daily activities. *See* AR 30 ("This is not to say that the claimant was symptom free, or did not experience difficulty performing some tasks. However, the record as a whole does not demonstrate the existence of limitations of such severity as to have precluded her from performing all work on a regular and continuing basis at any time from the alleged onset date of disability."). The ALJ used what he heard from Smith "to tailor an RFC that fit her limitations, though not necessarily the intensity to which she testified." *Green v. Saul*, 781 F. App'x 522, 528 (7th Cir. 2019). The ALJ was under no obligation to include in the RFC assessment every purported limitation that Smith claimed, because Smith has not identified any

unaddressed evidence that shows she would be entitled to more significant limitations than the ALJ found.

## IV. Conflict in Vocational Expert Testimony

At the hearing, the ALJ presented the VE with a hypothetical based on the RFC that he assessed for Smith, including a work environment with no fast-paced production quotas or rates (such as assembly line work) but with more goal-orientated production quotas (i.e., daily, weekly, or monthly quotas). AR 66. The VE responded that the jobs of order clerk (17,000 nationally) and telephone quotation clerk (68,000 nationally) would be available. AR 67.

Smith argues that the requirements of these jobs obviously conflicted with the quota-based limitations in the ALJ's RFC and hypothetical question. *See* SSR 00-4p ("When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [VE] evidence to support a determination or decision about whether the claimant is disabled"). However, contrary to Smith's assertion, the ALJ in this case performed his duty under SSR 00-4p to resolve any apparent conflict with the Dictionary of Occupational Titles (DOT).

The ALJ specifically asked the VE whether the DOT addressed the issues of work pace and production rate in the same terms that he had used in the hypothetical. AR 67. The VE responded that the DOT does not account for work pace or production rate, so he used the census code and eliminated those jobs falling within census code 7702896, which requires fast-paced production. *Id.* The VE also testified that postural restrictions are not contained in the DOT but are "addressed by the Selected Characteristics of Occupations, a companion of the DOT." *Id.* When the ALJ asked generally about what levels of worker absenteeism an employer would tolerate, the VE testified that using census data, Department of Labor statistics, OSHA recommendations, and his professional experience, employers tolerated about eight to nine absences a year and up to 10% time of task. AR 68-69.

14

Smith also argues that an individual who answers calls at a restaurant, hotel, or financial firm cannot simply put off those calls so long as they answer a given number of them on a daily, weekly, or monthly basis. But Smith forfeited her challenge to the VE's methodology by failing to object to it at the hearing before the ALJ. *See Fetting v. Kijakazi*, 62 F.4th 332, 338 (7th Cir. 2023) ("A claimant who fails to object at the hearing forfeits any challenge to the VE's testimony."). Although Smith's counsel was given the opportunity to cross examination the VE at the hearing, she did not do so. AR 69.

Smith also argues that the telephone quotation clerk job identified by the VE has been rendered obsolete by the internet because that position involves answering telephone calls from customers requesting stock quotations. *See Kordeck v. Colvin*, 2016 WL 675814, at *9 (N.D. Ind. Feb. 19, 2016) (generally questioning in dicta the continuing relevancy of DOT and telephone quotation clerk position). As with her first challenge, Smith has waived this issue by not raising it at the hearing. However, even if Smith had not waived this argument, it would not be persuasive. "Although the Seventh Circuit has often criticized the Social Security Administration's reliance on the outdated DOT, the court 'has not reversed based on DOT obsolescence alone.'" *Everson v. Kijakazi*, 2022 WL 3656462, at *8 (E.D. Wis. Aug. 25, 2022) (internal citations omitted). Moreover, aside from reciting the description contained in the DOT and an unpublished case questioning its continued relevance in dicta, Smith has not cited any authority showing that the telephone quotation clerk job is so outdated that no reasonable ALJ could rely on it. *Id.* (holding same in rejecting plaintiff's argument about obsolescence of three different jobs identified at step five).

In any event, any error that the ALJ may have committed in relying on the VE's testimony regarding the telephone quotation clerk is harmless because the VE identified the position of order clerk with 17,000 jobs in the national economy. Smith has not argued that a finding of 17,000 jobs is insignificant, and that number fits within the range that other courts have found to be significant. *See Milhem v. Kijakazi*, 52 F.4th 688, 695 (7th Cir. 2022) (holding

that "[o]ur circuit's case law does not provide a clear baseline for how many jobs are needed" and identifying cases from other circuits in which courts found 10,000 to 35,000 national jobs to be significant); *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (6,000 nationwide jobs was significant); *Dorothy B. v. Berryhill*, 2019 WL 2325998, at *7 (N.D. Ill. May 31, 2019) (17,700 nationwide jobs was significant).

## V. Conclusion

In sum, Smith has failed to show that the ALJ committed any harmful legal errors or that his decision that Smith is not disabled is not supported by substantial evidence. Although I empathize with Smith ongoing challenges, I conclude that she has failed to meet the stringent standard for an award of disability under the Social Security Act.

## ORDER

IT IS ORDERED that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 18th day of July, 2023.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge